UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23627-CIV-O'SULLIVAN

[CONSENT]

ENERGY SMART INDUSTRY, LLC,

      Plaintiff

v.

BIG R OF LAMAR, INC.,

      Defendant

_____/

## <u>ORDER</u>

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31, 1/31/12). On November 14, 2011, the parties consented to magistrate judge jurisdiction for all further matters in this case including trial. <u>See</u> Joint Consent to Jurisdiction by a United States Magistrate Judge (DE# 18, 11/14/12). This matter was referred to the undersigned by the Honorable Joan A. Lenard for all further proceedings, including final disposition of this case. <u>See</u> Order of Full Referral to Magistrate Judge (DE# 19, 11/15/11). Having carefully considered the applicable filing and the law, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31, 1/31/12) is **DENIED** for the reasons stated herein.

## BACKGROUND

On September 8, 2011, Energy Smart Industry, LLC (hereinafter "plaintiff" or "Energy Smart") filed an action in state court against the defendant, Big R of Lamar, Inc. (hereinafter "defendant" or "Big R"), for (1) breach of contract, (2) breach of covenant of good faith and fair dealing and (3) unjust enrichment. See Defendant's Notice of Removal (DE#1, 10/6/11). The action was subsequently removed by the defendant to this Court on October 16, 2011 based on diversity jurisdiction. Id.

The plaintiff filed an amended complaint on November 1, 2011. See Amended Complaint (DE# 13, 11/1/11). The Amended Complaint (DE# 13, 11/1/11) alleges the following five causes of action against the defendant: (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) unjust enrichment, (4) quantum meruit and (5) promissory estoppel. Id. On January 31, 2012, the defendant filed the instant motion to dismiss. See Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31, 1/31/12). The plaintiff filed its response in opposition on March 8, 2012. See Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37, 3/8/12). The defendant filed its reply on March 19, 2012. See Defendant's Reply Memorandum in Support of Motion to Dismiss (DE# 39, 3/19/12). This matter is ripe for consideration.

## STANDARD OF REVIEW

The defendant moves to dismiss the Amended Complaint (DE# 13, 11/1/11) pursuant to FED. R. CIV. P. 12(b)(2) and (b)(6). Rule 12(b)(2) allows a defendant to assert the defense of lack of personal jurisdiction. "A federal court sitting in diversity

2

may properly exercise jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999) (citing Sculptchair, Inc. v. Century Arts Ltd., 94 F.3d 623, 626 (11th Cir. 1996)). Both prongs must be satisfied for personal jurisdiction to exist. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

The plaintiff has the initial burden of alleging a prima facie case of personal jurisdiction over a nonresident defendant. See Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 255 (11th Cir. 1990). The burden then shifts to the defendant to challenge the plaintiff's allegations and may contest jurisdiction through affidavits, documents or other evidence. See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant meets its burden, the plaintiff must substantiate the jurisdictional allegations in its complaint by affidavits or other competent proof, and may not merely rely upon the factual allegations set forth in the complaint. Posner, 178 F.3d at 1215. Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006).

The defendant also seeks dismissal of Count I (breach of contract) of the Amended Complaint (DE# 13, 11/1/11) pursuant to FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss brought under Rule 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must also

3

accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc. 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The issue to be decided is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by David v. Scheuer, 468 U.S. 183 (1984).

## FACTS[1]

Big R operates a number of farm, ranch and home retail stores in Colorado, Texas and New Mexico. See Affidavit of Michael Carroll (DE# 5-1 at ¶5, 10/13/11). Energy Smart performs audits and analysis of energy costs associated with non-LED lighting for businesses. See Amended Complaint (DE# 13 at ¶10, 11/1/11). Upon conclusion of its analysis, Energy Smart installs the appropriate LED-lighting design to

---

[1] On a Rule 12(b)(2) motion, "[a]llegations in the complaint are accepted as true, to the extent they are uncontroverted by defendant's non-conclusory affidavits or deposition testimony." In re Trasylol Products Liability Litigation - MDL - 1928, No. 08-cv-81212, 2011 WL 5529934, at *2 (S.D. Fla. Jul. 21, 2011) (citing Morris v. SSE Inc., 843 F.2d 489, 492 (11th Cir. 1988)). "Where the evidence presented by the parties' affidavits and deposition testimony conflicts, all reasonable inferences are drawn in favor of the non-movant plaintiff." Id.

4

replace the current lighting design of a business. Id. In exchange, Energy Smart takes a portion of the energy savings realized by the business as a result of the installation of LED-lighting for an agreed upon term. Id. Almost all of Energy Smart's projects are in Florida. Id. at ¶11.

The initial business negotiations between the parties in the instant case "were done through Energy Smart's representatives outside of Florida . . . ." Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 10, 3/8/12). On April 25, 2011, the parties executed the LED Lighting Retrofit Agreement (hereinafter "Agreement"). See Amended Complaint (DE# 13-1 at 6, 11/1/11). The CEO of Energy Smart, David Houri, agreed to participate in the project if two criteria were met: (1) Big R would have to remit 100% of the savings to Energy Smart for the project and (2) Big R would have to agree to litigate any disputes arising out of the project in Florida. Id. at ¶13. Energy Smart was directed by Big R's operations manager, Bill Briggs, to quickly begin the project. Id. at ¶¶12, 14. Big R knew that implementing the project would result in the expenditure of extensive costs and resources for Energy Smart. Id. at ¶14 Energy Smart expended the funds in reliance on Big R's performance of its contractual obligations. Id. at ¶16.

The project fell apart when it came time to confirm the installation of lighting in the first store. See Deposition of Will Molasky (DE# 31-2 at 14, 1/31/12). On August 1, 2011, Energy Smart sent a letter to Big R, stating that Big R was in breach of the terms of the Agreement because it had not permitted Energy Smart full access to its sites in order for Energy Smart to finalize the project. See August 1, 2011 Letter, Exhibit B to Amended Complaint (DE#13-2 at 2, 11/1/11). Energy Smart alleges that it incurred

substantial damages, including engineering and design costs, as well as the loss of the savings payments as a result of the breach. See Amended Complaint (DE#13 at ¶19, 11/1/11).

## ANALYSIS

**I.      Motion to Dismiss for Lack of Personal Jurisdiction under F**ED. **R. C**IV. **P. 12(b)(2)**

        **a.      The Florida Long-arm Statute**

The Amended Complaint invokes subsections (a), (f) and (g) of the Florida long-arm statute. Amended Complaint (DE# 13 at ¶3, 11/1/11). These subsections read as follows:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> > (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> >
> > (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
> >
> > > 1. The defendant was engaged in solicitation or service activities within this state; or
> > >
> > > 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

6

> (g) Breaching a contract in this state by failing to perform
> acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a), (f)-(g). "The long-arm statute must be strictly construed; therefore, any doubts about the applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." Kreston v. FirstCollect, Inc., 523 F. Supp. 2d 1348, 1353 n. 2 (S.D. Fla. 2007) (citing Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007)).

The defendant argues that the Amended Complaint (DE# 13, 11/1/11) should be dismissed because the Court lacks personal jurisdiction over it under the Florida long-arm statute, Fla. Stat. § 48.193. See Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31 at 1, 1/31/12). Specifically, the defendant argues that "Big R has not 'conducted business' in Florida under Section 48.193(1)(a), has not caused Energy Smart personal injury or property damage under Section 48.193(1)(f), and Energy Smart cannot plead any breach of contract claim against Big R sufficient to support personal jurisdiction under Section 48.193(1)(g)." Id. In its response to the instant motion, the plaintiff argues that the Court has personal jurisdiction over the defendant pursuant to § 48.193(1)(a) and (g). See Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 20, 3/8/12). The plaintiff does not raise any arguments with respect to subsection (f). Accordingly, the undersigned will not address personal jurisdiction under subsection (f) in this Order.

7

### i.     Personal Jurisdiction under § 48.193(1)(a)

Section 48.193(1)(a) of the Florida long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant who "engages in or carries on business in Florida." Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc., No. 10-12836, 2012 WL 2383021, at *3 (11th Cir. Jun. 26, 2012) (per curiam) (citing Fla. Stat. § 48.193(1)(a)). "In order to qualify for jurisdiction under section 48.193(1)(a), a foreign defendant's business activities must, taken together, 'show a general course of business activity in the state for pecuniary benefits.'" Barrocos of Fla., Inc. v. Elmassain, No. 11-cv-22393, 2012 WL 1622988, at *3 (S.D. Fla. May 9, 2012) (quoting Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005)). Factors relevant to this determination include: "'the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients.'" Id. (quoting Horizon Aggressive Growth, 421 F.3d at 1167)).

The plaintiff states that "at the behest of Big R, Energy Smart conferred upon Big R a benefit, such as the lighting design, which Big R voluntarily accepted," that "[i]n order to do so, Energy Smart's representatives in Florida worked in conjunction with Big R's representatives by phone, email and webinars" and that "although the raw data was compiled outside of Florida, information was sent by Big R to Florida, and all the detailed computations were done in Florida." Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 12-13, 3/8/12). The plaintiff also mentions in its response that the defendant has a website that offers its

8

entire product mix for immediate shipping to any business or individual in Florida, has sold products to clients in Florida and "advertises its website and products on the internet 'for anybody in the United States to purchase no matter their location' based on internet searches for 'specific words' . . . [and] also purchases products from Florida, albeit a very small amount of its total purchases." Id. at 8 (citations to the record omitted).[2]

The defendant maintains that it does not conduct business in Florida under 48.193(1)(a) and has submitted the Declaration of Adam Carroll (DE# 31-1, 1/31/12) concerning the defendant's operation of a website and the extent of its sales and purchases in Florida. See Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31, 1/31/12). Mr. Carroll is the general manager of Big R. See Declaration of Adam Carroll (DE# 31-1 at ¶2, 1/31/12). Mr. Carroll attests that prior to September 2011, Big R's website was used for informational purposes only and no customers could purchase products from its website. Id. at ¶4. Beginning in September 2011, customers were able to purchase products through the website and for the year 2011, a total of six (6) orders came from Florida, amounting to $363.25 in sales. Id. Less than 0.000016 percent of Big R's sales came from these six orders and Big R made no other Florida sales. Id. Mr. Carroll further attests that less

---

[2] It is unclear whether the facts supporting the plaintiff's argument that the defendant engages in or carries on a business in Florida includes the facts concerning the defendant's website. Nonetheless, the undersigned will consider the facts relating to the defendant's website in determining whether personal jurisdiction under subsection (1)(a) is met.

than 0.000145 percent of Big R's purchases were either placed to or delivered from Florida in 2011. Id. at ¶5.

In determining whether a non-resident defendant was carrying on a business or business venture in Florida, the focus is on the defendant's actions. See Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (stating that "[i]n order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, **[t]he activities of the [defendant]** sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.") (emphasis added; citation and quotation marks omitted; some alterations in original); Elandia Int'l Inc. v. Ah Koy, 690 F. Supp. 2d 1317, 1334 (S.D. Fla. 2010) (stating that "[a] plaintiff must show that **the defendant engaged in a general course of business activity** in the state for pecuniary benefit to satisfy § 48.193(1)(a)") (emphasis added). The plaintiff argues that the defendant was carrying on a business or business venture in Florida under subsection (1)(a) of the long-arm statute because:

> (i) . . . the pre-contract negotiations were controlled by and in direct consultation with Mr. Houri in Florida through Energy Smart's representatives; (ii) . . . after the "due diligence" stage and Big R re-confirming that they wanted to move forward with the Project, Big R directly communicated and worked with Energy Smart's representatives in Florida, including Mr. Molasky;[3] (iii) . . . much of the work for the Project and all the design and analysis was to be performed in Florida by Mr. Houri and Mr. Molasky, and (iv) . . . Big R was required to make the Savings Payments to Energy Smart in Florida.

---

[3] Will Molasky is the vice present of Energy Smart. See Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 2 n.2, 3/8/12).

Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 10, 3/8/12) (footnote added). With the exception of the last fact, which will be addressed below, the actions listed by the plaintiff were not the actions of the defendant but the actions the <u>plaintiff</u> undertook in the forum state on behalf of the defendant or in furtherance of the contract. In <u>Clover Systems, Inc. v. Almagran, S.A.</u>, No. 05-22539-CIV, 2007 WL 1655377, at *4 (S.D. Fla. Jun. 7, 2007), for example, this Court found that 48.193(1)(a) had been met where the defendants took the following affirmative acts:

> (1) . . . engaged in business activities with Plaintiff, a Florida corporation since December 1999; (2) made regular trips (two per year) into the forum to facilitate its business activities with Plaintiff; (3) transmitted thousands of electronic communications, including telephone calls, into Florida; (4) derived a substantial proportion (15%) of its total revenues from its relationship with Plaintiff in the forum; and (5) wired money on 101 occasions to Plaintiff's Florida-based bank to effectuate the reconciliation of accounts and distribution of profits.

The plaintiff also states that "Energy Smart's representatives in Florida worked in conjunction with Big R's representatives by phone, email and webinars." Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 13, 3/8/12). In <u>Mold-Ex, Inc. v. Michigan Technical Representatives, Inc.</u>, No. 04-CV-307-MCRMD, 2005 WL 2416824, at *3 (N.D. Fla. Sept. 30, 2005), the court found that the defendant was not carrying on a business in Florida even though the defendant "may have had 'continuous' telephonic and electronic communications with [the plaintiff] at its office in . . . Florida." <u>See</u> <u>also</u> <u>Horizon Aggressive Growth</u>, 421 F.3d at 1167 (rejecting argument that defendant was doing business as defined by 48.193(1)(a) and stating that "[w]hile [the defendant] made telephonic and electronic communications

11

from its California offices into Florida, these communications cannot constitute 'conducting business' in Florida."); Elandia Int'l Inc., 690 F. Supp. 2d at 1334 (finding that "[t]he evidence that [the plaintiff] listed to show that [the d]efendants engaged in a general course of business in Florida [wa]s woefully insufficient" where the plaintiff alleged that "[the d]efendants derived a pecuniary benefit from a Florida-based company under the Arrangement Agreement; traveled to Florida, sent phone calls and e-mails into Florida, had contacts with Florida during the negotiation of the Stock Purchase Agreements; and agreed to litigate in Florida.").

Here, the defendant does not operate an office or any stores in Florida, does not hold real property in Florida, does not have any agents or employees in Florida and the number of sales in Florida and the number of purchases made by the defendant in or from Florida are de minimis. See Affidavit of Michael Carroll (DE# 5-1 at ¶¶ 5-6, 10/13/11); Declaration of Adam Carroll (DE# 31-1 at ¶¶ 4-5, 1/31/12). Although the Agreement contains a forum selection clause, Agreement (DE# 13-1 at 6, 11/1/11),[4] the Florida Supreme Court has held that "a forum selection clause, designating Florida as the forum, cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting non-resident defendant." McRae v. J.D./M.D., Inc., 511 So. 2d 540, 542 (Fla. 1987).  The undersigned has already determined that the other factors cited by the plaintiff are insufficient to support the conclusion that the defendant was

---

[4] The Agreement states: "Venue and jurisdiction for any interpretations or enforcement of this Agreement shall be in Courts of the State of Florida located in Miami-Dade County, Florida. This Agreement shall be construed and enforced in accordance with Florida law." Agreement (DE# 13-1 at 6, 11/1/11).

engaged in business in Florida within the meaning of 48.193(1)(a).[5]  For these reasons,

the Court concludes that the defendant does not engage in or carries on  business in

Florida under § 48.193(1)(a). Accordingly, the plaintiff has not met its burden of

showing personal jurisdiction under subsection (1)(a).

### ii.      Personal Jurisdiction under § 48.193(1)(g)

The plaintiff also argues that the Court has personal jurisdiction over the

defendant pursuant to subsection (1)(g) of the Florida long-arm statute. "Under Florida

law, to find jurisdiction pursuant to § 48.193(1)(g), a plaintiff must show that 'the

defendant failed to perform an act or acts whose performance was to be in Florida and

that such breach formed the basis for the cause of action for which relief is sought by

the plaintiff.'" Thomas v. Brown, No. 11-62261-CIV, 2012 WL 987760, *7 (S.D. Fla.

---

[5] The parties dispute whether the plaintiff agreed to forego the damages it claimed it incurred in Florida as a basis for personal jurisdiction. See Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31 at 14-15, 1/31/12) (stating that "to avoid producing documents to substantiate its claims for damages in Florida as part of the phase of discovery regarding personal jurisdiction, Energy Smart has stipulated that the alleged damages which it claims to have incurred in Florida are not a basis for the exercise of personal jurisdiction over Big R of Lamar in Florida.") (emphasis omitted); Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Amended Complaint (DE# 37 at 11, 3/8/12) (stating that "the emails explaining Energy Smart's position . . . [are] taken out of context" and that "Energy Smart never stipulated to this preclusion"). Although counsel's emails could have been more carefully worded, the Court has reviewed the correspondence between the parties and agrees with the plaintiff that its intent was that it would not be relying on damages incurred in Florida to support personal jurisdiction under subsection (1)(f) of the long-arm statute and did not intend to waive its damages argument for other subsections of the long-arm statute. See Email (DE# 39-1 at 27, 3/19/12) (although plaintiff's counsel states "we will not be relying on any economic damages incurred as a result of your client soliciting ours in Florida for purposes of establishing personal jurisdiction," the language of the case law quoted in the email references 48.193(1)(f)). Ultimately, the issue is not material to the disposition of the instant motion since the Court finds that it has personal jurisdiction under subsection (1)(g) of the Florida long-arm statute, which does not concern damages.

Mar. 22, 2012) (quoting <u>Cosmopolitan Health Spa, Inc. v. Health Industries, Inc.</u>, 362 So. 2d 367, 368 (Fla. 4th DCA 1978)). "Failure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida." <u>Global Satellite Communication Co. v. Sudline</u>, 849 So. 2d 466, 468 (Fla. 4th DCA 2003) (citing <u>Hartcourt Co., Inc. v. Hogue</u>, 817 So. 2d 1067 (Fla. 5th DCA 2002)). Florida law states that "a debtor presumptively has to pay a creditor at the creditor's place of business, absent a contractual provision stating otherwise." <u>Am. Univ. of the Caribbean</u>, 2012 WL 2383021, at *3 (citing <u>Vacation Ventures, Inc. v. Holiday Promotions, Inc.</u>, 687 So. 2d 286, 289 (Fla. 5th DCA 1997)) (footnote omitted). "This presumption, standing alone, can satisfy Florida's long-arm statute." <u>Id.</u> (citing <u>Kane v. Am. Bank of Merritt Island</u>, 449 So. 2d 974, 975 (Fla. 5th DCA 1984)).

Pursuant to the Agreement executed by the parties, the defendant agreed to pay the plaintiff "a fee for all services and installed property that are the subject of this Agreement, as specified hereinafter in Exhibit A and Exhibit B." <u>See</u> Agreement (DE# 13-1 at 2, 11/1/11). The agreement lists the plaintiff's principal place of business as Hollywood, Florida. <u>Id.</u> The agreement does not specify where payment would be made. Based on the presumption under Florida law that the defendant's payments under the Agreement would have been due in Florida, the Court concludes that subsection (1)(g) of the Florida long-arm statute is satisfied. The defendant argues that the Agreement is not a valid contract under the law. Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31 at 17,

14

1/31/12). The Court is unpersuaded by this argument for the reasons discussed in Section II of this Order.

     **b.**    **Due Process**

     In addition to meeting the requirements of the state long-arm statute, a federal court sitting in diversity must ensure that jurisdiction satisfies the due process requirements of the Fourteenth Amendment. Posner, 178 F.3d at 1214. "Subjecting [the defendant] to jurisdiction in Florida comports with due process so long as minimum contacts exist between [the defendant] and Florida and exercising jurisdiction does not offend traditional notions of fair play and substantial justice." Id. at 1220 (citation and internal quotation marks omitted).

       **i.**    **Minimum Contacts**

     The Eleventh Circuit has adopted the following three-part test in determining whether the minimum contacts requirement is met: (1) the contacts must be related to the plaintiff's cause of action, (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state and (3) the defendant's contacts must be such that the defendant should reasonably anticipate being haled into court there. Posner, 178 F.3d at 1220. Some of the factors considered by the Court in determining whether the exercise of personal jurisdiction over the defendant would offend notions of fair play and substantial justice include: "the burden on [the defendant] of defending the suit in Florida; Florida's interest in adjudicating the suit; [the plaintiff's] interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the

states in furthering shared substantive policies." Id. at 1221 (citing Madara v. Hall, 916

F.2d 1510, 1517 (11th Cir.1990)).

"[W]hen inspecting a contractual relation for minimum contacts [the Eleventh

Circuit] follow[s] a 'highly realistic approach' that focuses on the substance of the

transaction: prior negotiations, contemplated future consequences, the terms of the

contract and the actual course of dealing." Diamond Crystal Brands, Inc. v. Food

Movers Intern, Inc., 593 F.3d 1249, 1268 (11th Cir. 2010) (citing Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 479 (1985)). The focus is on the nonresident defendant's

conduct and "whether th[at] defendant deliberately engaged in significant activities

within a state or created continuing obligations with residence of the forum." Id.

Here, the Agreement contains a notice requirement which states:

NOTICE: Any notice pursuant to this Agreement shall be given in writing
by (a) expedited delivery service (either Federal Express, UPS, or
Airborne), or (b) United States Mail, 1st class postage prepaid, registered
mail, or certified mail, return receipt requested, sent **to the intended
addressee at the address set forth in this Agreement** and shall be
deemed to have been given as of the date of the first attempted delivery
at the address and in the manner provided herein or by signed
acknowledgment of receipt by the other party.

Agreement (DE# 13-1 at 6, 11/1/11). The plaintiff's address as listed in the agreement

is in Florida. Id. at 2. There are several provisions in the Agreement that would require

the defendant to provide notice to the plaintiff and, pursuant to the aforementioned

notice provision, that notice would take place in Florida. For example, the agreement

provides that: "All products, wiring, transformers, and all other equipment and products

installed by ESI shall be repaired within a reasonable time of the service need being

reported to ESI by Client." Id. at 2. The Agreement also provides that the plaintiff has 30

16

days to cure any default after written notice from the defendant. Id. at 5. Under the notice requirement, the defendant would have to mail that written notice to Florida. Additionally, the undersigned has already determined that the defendant would have had to submit payments to the plaintiff in Florida. Thus, the Agreement between the parties contemplated that the defendant would have ongoing contacts with the plaintiff in Florida. See Diamond Crystal Brands, Inc., 593 F.3d at 1269 (noting that "[t]he terms of the contracts and the course of performance reveal that the transactions involved contact with [the forum state]."). "When evaluating the 'purposeful availment' requirement, a court must 'ensure [ ] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .'" United Subcontractors, Inc. v. Godwin, No. 11-81329-CIV, 2012 WL 1587943, at *4 (S.D. Fla. May 4, 2012) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Here, the Agreement between the parties contained a forum selection clause which provides that disputes be litigated in Miami-Dade County, Florida. Agreement (DE# 13-1 at 5, 11/1/11). In light of the notice requirements and the forum selection clause, it was reasonably foreseeable to the defendant that it would be haled into Court in Florida. "'[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 475 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

## ii.    Fair Play and Substantial Justice

"Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate

being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Madara, 916 F.2d at 1517 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Factors to be considered by the Court in analyzing fair play and substance justice "are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." Id. (citing Burger King, 471 U.S. at 477).

In the instant case, the defendant has not specifically articulated its burden in litigating the instant action in Florida. The plaintiff is a Florida corporation and Florida has an interest in protecting the contracts of its corporations through adjudication of suits arising thereof. See E-One, Inc. v. R. Cushman & Associates, Inc., No. 5:05-cv-209-Oc-10GRJ, 2006 WL 2599130, at *12 (M.D. Fla. May 15, 2006) (stating that "[t]he State of Florida has a strong interest in protecting the interests of its corporate citizens."). The plaintiff has alleged that it "is a relatively small company and does not have the financial means to seamlessly litigate cases throughout the country." Amended Complaint (DE# 13 at ¶6, 11/1/11). Adjudicating this dispute against all parties in Florida will provide the plaintiff with convenient and effective relief and will serve judicial efficiency on an interstate level.

In sum, the undersigned concludes that the defendant's contacts with Florida were sufficient to warrant the exercise of personal jurisdiction over it in this forum.

18

II.     **Motion to Dismiss Based on Failure to State a Claim for Breach of Contract under FED. R. CIV. P. 12(b)(6)**

The defendant also moves to dismiss Count I (breach of contract) of the Amended Complaint (DE# 13, 11/1/11) for failure to state a claim upon which relief may be granted. See Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31 at 17, 1/31/12). The elements of a breach of contract claim under Florida are: "(1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). The defendant argues that the Amended Complaint fails to state a cause of action for breach of contract because: "[f]irst, a close reading of the . . . Agreement demonstrates it is illusory and cannot support any breach of contract claim" and "[s]econd . . . [the] Agreement imposes no enforceable contractual obligation on Big R of Lamar to make any savings payment in any specific amount or amounts, but merely sets out a formula by which some future agreement to do so might be reached." Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31 at 17, 1/31/12).

a.      **The Agreement Is Not Illusory**

"A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor – who says, in effect, 'I will if I want to.'" Princeton Homes, Inc. v. Virone, 612 F.3d 1324, 1331 (11th Cir. 2010) (quoting Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1311 (11th Cir.1998)). "An illusory promise does not constitute consideration for

the other promise, and thus the contract is unenforceable against either party." <u>Johnson</u>
<u>Enters. of Jacksonville</u>, 162 F.3d at 1311. The defendant argues that the Agreement
"imposed no actual obligation on Energy Smart" because it gave "Energy Smart the
'right to terminate [the Retrofit Agreement] after initial inspection of the Project and
conducting its proper due diligence,' in which event neither party had remaining
obligations." Defendant's Motion to Dismiss Plaintiff's Amended Complaint and
Memorandum of Law in Support (DE# 31 at 18, 1/31/12) (citing Agreement (DE# 13-1
at 4, 11/1/11)).

> The Agreement states, in pertinent part, as follows:

> TERMINATION BY ESI: Notwithstanding anything in this Agreement to
> the contrary, ESI shall have the right to terminate this Agreement after
> initial inspection of the Project and conducting its proper due diligence, in
> which event neither ESI nor Client shall have any obligations under this
> Agreement, and thereupon this Agreement shall thereafter be deemed
> null and void.

Agreement (DE# 13-1 at 4, 11/1/11).

> "Even if there is no mutuality of termination, Florida courts have upheld the
unilateral right of one party to cancel a contract as long as consideration exists." <u>Avatar</u>
<u>Dev. Corp. v. De Pani Const., Inc.</u>, 834 So. 2d 873, 875 (Fla. 4th DCA 2002) (citing
<u>Rollins Servs. v. Metro. Dade County</u>, 281 So. 2d 520 (Fla 3d DCA 1973); <u>Murry v.</u>
<u>Zynyx Mktg. Commc'ns, Inc.</u>, 774 So. 2d 715 (Fla. 3d DCA 2000)). In <u>Avatar Dev.</u>
<u>Corp.</u>, 834 So. 2d at 874, the contract between the parties contained the following
termination clause: "67.1 The Company [Avatar] may terminate this Agreement at any
time for any reason by giving at least ten (10) days prior written notice." The trial court
determined that "the unilateral, termination provision contained in Article 67 was illusory

and unfair because it lacked in mutuality of obligation." Id. at 875. On appeal, the Fourth

District reversed the trial court's finding concluding that: "Article 67 [wa]s a valid and

enforceable unilateral termination clause as it required Avatar to provide 'at least ten

(10) days prior written notice,' which constituted sufficient consideration." Id. (citing

Sugar Cane Growers Coop. of Fla., Inc. v. Pinnock, 735 So. 2d 530 (Fla. 4th DCA

1999). The appellate court noted that other provisions of the contract allowed the

opposing party to terminate the court thereby creating "mutuality of termination." Id.

Ultimately, the appellate court concluded that even if there was no mutuality of

termination, the termination clause in article 67 was valid because it had consideration.

Id. Courts have found unilateral termination clauses valid where the termination clause

contains a notice requirement. See Murry, 774 So. 2d at 715 (stating that "[t]he contract

require[d] [the plaintiff] to provide [the defendant] with sixty days written notice of his

intent to terminate the contract. This condition was sufficient to satisfy mutuality

requirement for the contract); Sugar Cane Growers Coop. of Fla. Inc., 735 So. 2d at

530 (ten-day notice requirement before termination of contract was sufficient to

overcome claim of lack of mutuality); Bossert v. Palm Beach County Comprehensive

Community Mental Health Ctr., Inc., 404 So. 2d 1138 (Fla. 4th DCA 1981) (two-week

notice requirement sufficient to avoid lack of mutuality claim).

      Here, the unilateral termination clause in the Agreement is different from the

cases cited above because it does not contain a notice requirement. Nonetheless, even

if the unilateral termination clause in the contract lacks consideration, other portions of

the contract are supported by consideration. See Agreement (DE# 13-1 at 2, 11/1/11)

(stating that "[i]n consideration for the performance of the WORK, Client shall pay ESI

an amount equal to 100% (one hundred percent) from the agreed savings to Client resulting from the Work as later calculated by ESI pursuant to said Exhibit A and Exhibit B . . . .").  Here, the plaintiff is not seeking to enforce the unilateral termination clause and the Agreement contains a severability clause which provides that:

"SEVERABILITY: The invalidity of any one of the terms, conditions, or provisions of the Contract Documents, or any portion thereof, shall not affect the remaining portions thereof, and the Contract Documents shall be construed and enforced as if such invalid term, condition, or provision had not been included." Agreement (DE# 13-1 at 5, 11/1/11). Valid severability clauses are enforceable under Florida law. "As a general rule, contractual provisions are severable, where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations." Fonte v. AT&T Wireless Services, Inc., 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005); see also VoiceStream Wireless Corp. v. U.S. Communications, Inc., 912 So. 2d 34, 38-39 (Fla. 4th DCA 2005) (remaining agreement was valid because unenforceable portions of the agreement were contractually severable). Thus, assuming, arguendo, that the unilateral termination clause is unenforceable for lack of consideration, the plaintiff could still be able to enforce the remaining portions of the contract pursuant to the severability clause. Accordingly, the Court finds that the Agreement is not invalid for lack of consideration.

  **b.**  **The Agreement Imposes a Contractual Obligation on the Defendant to Make Payments**

   The defendant further argues that the plaintiff's breach of contract claim fails because the "Agreement . . . placed no parameters or boundaries – or any definiteness

whatsoever – on the price Energy Smart could charge Big R as 'savings payments'" and

therefore the Agreement "includes no defined obligation to make any payment."

Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law

in Support (DE# 31 at 18, 1/31/12). The undersigned disagrees with the defendant's

interpretation of the Agreement. The Agreement established a method of computing the

contract price as follows:

> CONTRACT PRICE: Client agrees to pay ESI, a fee for all services and
> installed property that are the subject of this Agreement, as specified
> hereafter in **Exhibit A and Exhibit B**. In consideration for the
> performance of the WORK, Client shall pay ESI an amount equal to 100%
> (one hundred percent) from the agreed savings to Client resulting from the
> Work as later calculated by ESI pursuant to said Exhibit A and Exhibit B,
> whatever they may be, each such payment to ESI being payable on the
> first (1st) day of each month during the seven (5) year term of this
> Agreement following the completion of the Work (hereinafter each such
> payment called a "Savings Payment"), subject to Paragraph 14 hereof as
> to the rights of ESI. Should Client choose to terminate this Agreement
> prior to expiration of its term, Client shall be responsible for paying the
> balance payable to ESI in the amount of the total monies due for the
> duration of this Agreement as hereinafter specified in **Exhibit A and
> Exhibit B**. If the termination by the Client occurs before the retrofit is
> finalized or before it started, the amount payable to ESI at ESI's option
> shall be the cost of the Work, including labor and materials plus ten (10%)
> percent profit and overhead.

Agreement (DE# 13-1 at 2, 11/1/11). The actual dollar amounts in Exhibits A and B of

the Agreement were intentionally left blank by the parties because the plaintiff needed

to conduct its inspection of the defendant's property prior to making its calculations.

See Exhibit A (DE# 13-1 at 8, 11/1/11); Exhibit B (DE# 13-1 at 9,11/1/11). However, the

method of calculating the Savings Payments is plainly set forth in these exhibits. Id.

This manner of ascertaining the contract price was agreed to by the defendant:

(b) Client [the defendant] further acknowledges the computations in **Exhibit A** and in **Exhibit B** cannot be completed until after the Work is completed; provided that notwithstanding that this Agreement is effective upon execution, provided further that Client and ESI agree that **Exhibit A** and **Exhibit B**, which calculate monthly savings realized and the Savings Payments to ESI, will be executed subsequent to the post retrofit meter reading and computations.

Agreement (DE# 13-1 at 3, 11/1/11). Additionally, the Agreement provided that: "Any change involving either an increase or decrease in the Savings Payment or the Contract Time may be accomplished only by a written agreement executed by both parties." Id. Therefore, the undersigned cannot agree with the defendant that the Agreement "placed no parameters or boundaries – or any definiteness whatsoever – on the price Energy Smart could charge Big R as 'savings payments'" and therefore the Agreement "includes no defined obligation to make any payment." Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31 at 18, 1/31/12). The defendant also maintains that the Agreement is defective because the effective date in the agreement was left blank and

[w]ithout an Effective Date, there is no time frame for Energy Smart to commence and complete the retrofit, rendering the dates the meter readings will be taken uncertain, and the methodology of the Savings Payments subject to, among many other things: (a) the cost of energy being charged by utility companies at the time the meter readings are taken; (b) Energy Smart's discretion to amend the calculation of Savings Payments.

Defendant's Reply Memorandum in Support of Motion to Dismiss (DE# 39 at 10 n. 18, 3/19/12). The fact that the effective date of the contract was left blank is not grounds for invalidating the Agreement. In Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, No. 11-60621-CIV, 2011 WL 6756916, at *3-4 (S.D. Fla. Dec. 22, 2011), this Court rejected the argument that a contract was unenforceable because it was

24

missing certain terms including a restriction period on a noncompete agreement. The Court agreed that "it [wa]s unclear from the face of the contract if the 'Restricted Period' was six months, one year, or eighteen months. It [wa]s, however, sufficiently alleged that there was a restriction on competing or working for a competitor for some length of time and that [the employee] breached this provision." Id. at 3. The Court concluded that "[a]ny ambiguity as to the time limit [wa]s an issue the Court [could] resolve" and that "[i]t d[id] not mean [the p]laintiffs ha[d] failed to state a claim." Id. at 4 (citing Corp. Mgmt Advisors, Inc. v. Boghos, 756 So. 2d 246, 247 (Fla. 5th DCA 2000)).

The Amended Complaint alleges the existence of (1) a valid contract, see supra, (2) a material breach in the defendant's refusal to "permit Energy Smart full and uninhibited access to the Properties to finalize the Project and Big R's unequivocal position that they would never make any of the Savings Payments"[6] and (3) damages in the form of missed "'Savings Payments' for all the Properties – amounting to hundreds of thousands if not millions of dollars - equipment related costs, engineering and design costs, survey and analysis costs, and costs associated with sales management and commissions." Amended Complaint (DE# 13 at ¶¶25-26, 11/1/11). Based on the foregoing, the undersigned concludes that the plaintiff has alleged a cause of action for breach of contract in the Amended Complaint (DE# 13, 11/1/11).

---

[6] The defendant points out that Energy Smart's CEO "could not identify any lighting design or energy analysis that Energy Smart was unable to finalize as a result of any conduct by Big R." Defendant's Reply Memorandum in Support of Motion to Dismiss (DE# 39 at 7, 3/19/12). Even if that is the case, the defendant's undisputed refusal to move forward with the project satisfies the material breach element of a breach of contract claim.

## CONCLUSION

The Court finds that the allegations of the Amended Complaint (DE# 13, 11/1/11), together with the submissions of the parties, satisfy both Florida's long-arm statute, section 48.193(1)(g), and due process constitutional minimum contacts and traditional notions of fair play and substantial justice. Accordingly, the defendant's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (DE# 31, 1/31/12) is **DENIED**. The defendant shall file an answer to the Amended Complaint (DE #13, 11/1/12) in accordance with the applicable rules.

DONE AND ORDERED in Chambers in Miami, Florida this **26th** day of July, 2012.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All Counsel of Record